UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIGRAN ISKENYAN,<br><br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>        Defendant. | Case No.: 1:19-cv-01260-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING SOCIAL SECURITY COMPLAINT**<br><br>(Docs. 20, 29) |

**INTRODUCTION**

Plaintiff Tigran Iskenyan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.

///

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend affirming the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on August 27, 2013. AR 133-37, 138-48.[2] Plaintiff alleged that he became disabled on March 28, 2013, due to lower back problems. AR 134, 181. Plaintiff's applications were denied initially and on reconsideration. AR 90-93, 95-100. Plaintiff requested a hearing before an ALJ, and following the hearing, ALJ John Cusker issued an order denying benefits on September 4, 2015. AR 11-20, 25-49, 101. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied. AR 1-3. Plaintiff appealed to the district court and, pursuant to stipulation of the parties, the matter was remanded to the Commissioner for further administrative proceedings in accordance with the fourth sentence of Section 205(g) of the Social Security Act. AR 421, 428. Thereafter, on February 13, 2018, the Appeals Council remanded the case to an ALJ, and directed the ALJ to address certain issues, including further evaluation of the examining source opinion of Dr. Stoltz, who opined that Plaintiff would require a rest break every hour. AR 430-32.

Upon remand, ALJ Nancy Stewart held a hearing on August 7, 2018. AR 338-62. ALJ Stewart issued an order denying benefits on December 3, 2018, and a reissued the decision on March 23, 2019. AR 297-313, 314-29. Plaintiff submitted exceptions to the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 290-93. This appeal followed.

**Hearing Testimony**

As stated, upon remand, ALJ Stewart held a hearing on August 7, 2018, in Fresno, California. AR 338-40. Plaintiff appeared with his attorney, Jonathan Pena. Paul Stanford, an impartial vocational expert, also appeared. AR 340.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

In response to questions from the ALJ, Plaintiff confirmed he was forty-seven years old with a tenth-grade education. He based his application on problems with his lower back. AR 341-42.

In response to questions from his attorney, Plaintiff testified that the main condition that keeps him from working is back pain, which is there all the time. At the hearing, Plaintiff rated his back pain as seven or eight out of ten without medication. When he takes his medication, his pain is a five or six. AR 342-43. Walking, exercising, and bending over aggravate his pain. He can walk five minutes before he has to stop and sit because of pain. He can stand two minutes before needing to take a seat because of back pressure. Aside from medication, he will lie down to alleviate the pain, but he does not receive any other treatment. On an average day, he will lie down or recline eighteen to twenty hours because of pain. The pain travels down his hips, back and sides. His doctors have not talked about any future surgeries or epidural shots. AR 343-45.

Plaintiff wore gloves at the hearing because he cannot have sun on his hands due to a skin disease he treats with lotion. Plaintiff reported problems with his fingers and cysts on both wrists. He has difficulty holding onto things and cannot hold a pen. He can type for a minute or two before his fingers get tight again. He can use his hands for two minutes before he has to give them a break. AR 345-48. Plaintiff's attorney confirmed Plaintiff has a ganglion cyst on his right wrist and dermatitis on his hands. AR 354.

When asked about his abilities, Plaintiff testified that he could lift and carry ten pounds. He can sit for twenty minutes to half an hour before he needs to stand. He cannot bend over to pick up things. AR 348-49.

When asked about his daily activities, Plaintiff testified that he takes his kids to school, stays home, and then brings his kids home. His wife does the chores. During the day, he watches TV and lies down. He can drive to his doctor appointments and take his own medications. He does not need any help with his personal needs. AR 349-50. Plaintiff reported that he has good days and bad days. He has gone to emergency two or three times a year because of pain. He also has migraines, which he experiences every two to three days. He rated the migraines at eight out of ten and uses Tylenol or Ibuprofen to help with the headaches. AR 350-51.

In response to questions from the ALJ, Plaintiff testified that he last worked in 2011, taking care of his daughter as in home supportive services. Plaintiff confirmed that his earnings in 2011, 2013 and 2014 were from caring for his daughter. When he took care of his daughter, he would watch so that she would not run away. She is autistic. At the time he was caring for her, she was ten or eleven years old. He did not have to lift, move, or restrain her. Before that, Plaintiff worked at Costco and at the U.S. Post Office. At the post office, he was a transitional employee clerk, sorting mail by ZIP codes and city names. The most he lifted was ten or fifteen pounds. When sorting the mail, he would sit in front of shelves and sort the mail, half standing and half sitting. AR 351-54.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE categorized Plaintiff's past work at the post office as mail clerk. AR 355. The ALJ also asked the VE hypotheticals. For the first hypothetical, the ALJ asked the VE to consider a range of light work, specifically lifting and carrying no more than twenty pounds occasionally, ten pounds frequently, pushing and pulling within the weight limit, standing and walking six out of eight hours, sitting six out of eight, but no ladders, ropes or scaffolds, no kneeling and no crawling. The ALJ also asked the VE to consider the ability to rest fifteen minutes, falling within the normal breaks and lunch periods, no prolonged periods in the direct sun, and a sit-stand option. The VE testified that this person could still perform the mail clerk position. AR 355-56.

If the ALJ added frequently handling and fingering, the VE testified that it would not allow past work. However, there would be other jobs at the light exertional level, such as sales attendant, parking lot attendant, and cafeteria attendant. If the person were reduced to occasional handling, these jobs also would be feasible. Additionally, the ability to perform these jobs would not be affected by alternative break hours, standing and stretching for one to two minutes. AR 356-57. The VE also indicated that the sit-stand option would be encompassed in the past work as a mail sorter. AR 357.

The ALJ then repeated the first hypothetical to include lifting and carrying no more than twenty pounds occasionally, ten pounds frequently, pushing and pulling within the weight limits, standing and walking six out of eight hours, sitting six out of eight, no ladders, ropes or scaffolds, no kneeling and no crawling, the ability to rest every two hours for ten to fifteen minutes, falling within the normal breaks and lunch periods, no prolonged periods in the direct sun, and a sit-stand option,

4

which would include, on alternate hours, the ability to stretch one to two minutes.  The VE confirmed that this would not eliminate past work.  However, if the person needed to be able to take rest breaks of fifteen minutes or so every hour, it would eliminate any employment.  If a person were absent two or more times a month because of chronic pain, reduced mobility, and fatigue, it would likewise eliminate all work.  AR 358.

Following the ALJ's questions, Plaintiff's attorney asked the VE to consider an individual needing to take a break the first hour for one to two minutes with a complete cessation of work activity and the second hour the regular ten-to-fifteen-minute break.  The VE did not believe that this additional element would change the outcome of whether the person would be able to perform the past work.  AR 359.  If these hypothetical factors were applied to sedentary work, the VE testified that it probably would preclude production jobs, but not sedentary jobs in an office setting.  AR 359-60.  If the individual was limited to occasional handling and fingering at the sedentary level, there would be no work.  AR 360.

As a final matter, in response to questions from the ALJ, Plaintiff testified that his job at the post office was a temporary position.  He stopped working when the position ended.  He tried to reapply for the job, but he could not get hired.  AR 360-61.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, following remand the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 300-13.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 28, 2013, the alleged onset date.  The ALJ identified the following severe impairments:  disorder of the spine and disorder of the right wrist.  AR 303.  The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 303-04.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work.  Plaintiff could lift and carry 20 pounds

occasionally and 10 pounds frequently, could stand and/or walk for six hours in an eight-hour workday, and sit for six hours in eight-hour workday.  He could not climb ladders, ropes, and scaffolds, and he could not kneel or crawl.  He also must have the ability to rest every two hours for 10-15 minutes, falling within the normal breaks and lunches.  He must be able to alternate sitting and standing and have no prolonged periods in direct sunlight.  AR 304-12.  With this RFC, the ALJ found that Plaintiff could perform his past relevant work as a mail clerk.  AR 312.  The ALJ therefore concluded that Plaintiff was not disabled.  AR 313.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# **DISCUSSION**[3]

Plaintiff argues that the ALJ did not comply with the directive of the Appeals Council to evaluate the medical source opinions, including that from Dr. Stoltz, and explain the reason for the weight given to this opinion evidence. Plaintiff further contends that the ALJ erred by failing to properly evaluate Plaintiff's subjective complaints of pain.

### **A.     Evaluation of Dr. Stoltz's Opinion**

On November 25, 2013, Dr. Stoltz conducted a consultative internal medicine evaluation. Plaintiff complained of back pain and pain in both arms. AR 260. He used bilateral wrist braces, which appeared new. On physical examination, in the seated position, Plaintiff had no back pain with knee extensions. In the supine position, he appeared somewhat uncomfortable, but had negative straight leg raising signs. Standing he had no obvious scoliosis, but there did seem to be some upper back kyphosis. He had forward flexion at 50 degrees. AR 263. His range of motion in the upper and lower extremities was within normal limits. AR 263-64. Plaintiff's grip strength seemed to be well-maintained bilaterally although slightly decreased symmetrically based on someone of his age and stature. AR 263. He had good motor tone bilaterally with good active motion and his strength was 5/5 in all extremities. When walking, Plaintiff had no focal or asymmetrical findings, but did seem to have somewhat upright posture when ambulating in the examination room. AR 264.

Dr. Stoltz opined that Plaintiff did not have any limits with sitting, standing or walking except that he should be allowed a rest break every one hour. He did not require any assistive devices and could lift/carry up to 20 pounds occasionally and up to 10 pounds frequently. He also could do

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

postural activities on an occasional basis. Plaintiff had no manipulative limitations or any relevant visual, communicative, or workplace environmental limitations. AR 264-65.

Plaintiff contends that the ALJ erred by failing to set forth specific, legitimate reasons for rejection the opinion of the consultative examiner, Dr. Steven Stoltz, and failing to properly account for the hourly rest breaks identified by Dr. Stoltz within Plaintiff's RFC.

Cases in this circuit under the rules applicable to the claims here identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Lester*, 81 F.3d at 830. If contradicted, the opinion of a treating or examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31. The opinion of a nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of either a treating or examining physician. *Id.* at 831.

Here, the hourly rest-break limitation imposed by Dr. Stoltz arguably was contradicted by the opinions of the state agency physicians, Drs. B. Williams and L. Kiger, and the post-remand consultative orthopedic examiner, Dr. Theodore Georgis Jr., none of whom identified a limitation to hourly rest breaks. *See* AR 54-56, 73-74, 663-67. The ALJ therefore was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount the opinion of Dr. Stoltz.

In this instance, the ALJ did not wholly reject the opinion of Dr. Stoltz. Instead, the ALJ assigned the opinion significant weight. AR 311. In so doing, the ALJ reasoned as follows:

> I have assigned significant weight to the opinion of Dr. Stoltz; however, his opinion relies heavily on the subjective report of symptoms and limitation provided by the claimant, and the totality of the evidence does not support his opinion that the claimant "should be allowed a rest break ever one hour." [¶] Furthermore, his opinion is not sufficiently particular regarding the amount of time the claimant should rest every one hour, and is not consistent with his objective findings and with his opinion that the claimant does not have any limits with sitting, standing or walking. However, in consideration of the claimant's

8

1
2
3
      subjective pain complaints, and with an abundance of caution, I have provided for the claimant's need for rest every two hours for 10-15 minutes, falling within the normal breaks and lunches, and I have integrated a sit and stand option in the above residual functional capacity wherein the claimant can stretch for one to two minutes on alternate hours.

4 AR 311-12.

5      Plaintiff argues that the ALJ erred by failing to reconcile the significant weight afforded to Dr.
6 Stoltz's opinion with the failure to incorporate Dr. Stoltz's hourly break limitation in the RFC.  (Doc.
7 20 at 6-7.)  As a preliminary matter, the Court notes that an ALJ need not accept everything a
8 physician sets forth, and may accept all, some or none of the physician's opinion. *Magallanes v.*
9 *Bowen*, 881 F.2d 747, 753-55 (9th Cir. 1989).  Although Plaintiff correctly identifies that the ALJ did
10 not accept Dr. Stoltz's limitation to hourly rest breaks, the Court finds that the ALJ provided specific
11 and legitimate reasons for discounting that particular portion of Dr. Stoltz's opinion.

12      As one reason, the ALJ determined that the limitation to hourly rest breaks was not consistent
13 with Dr. Stoltz's objective findings.  AR 312.  An ALJ may reject a doctor's opinion that is
14 inconsistent with the doctor's own findings.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir.
15 1995); *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (finding that an ALJ need not
16 accept an opinion of a physician if it is conclusory and brief and is unsupported by clinical findings).
17 As discussed above, Dr. Stoltz's examination revealed no back pain with knee extensions, negative
18 straight leg raising, normal range of motion in the upper and lower extremities, good motor tone with
19 good active motion, and 5/5 strength in all extremities.  AR 263-64.  Based on that examination, Dr.
20 Stoltz concluded that Plaintiff did not have any limits with sitting, standing and walking, but for the
21 hourly rest breaks.  The ALJ properly determined that Dr. Stoltz's relatively normal examination
22 findings and his conclusion that Plaintiff had no defined sitting, standing or walking limits provided no
23 objective support for the hourly rest break limitation.

24      As another reason, the ALJ determined that the hourly limitation appeared to be based more
25 heavily on Plaintiff's subjective complaints—which the ALJ properly discounted, as discussed
26 below—than on objective findings.  AR 311.  "A physician's opinion of disability 'premised to a large
27 extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where
28 those complaints have been 'properly discounted.'"  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). Nevertheless, in consideration of Plaintiff's subjective complaints, the ALJ provided for the claimant's need for rest every two hours for 10-15 minutes, falling within the normal breaks and lunches, and integrated a sit and stand option in the RFC wherein Plaintiff could stretch for one to two minutes on alternate hours. AR 312.

As another reason, the ALJ discounted Dr. Stoltz's hourly rest break limitation as unsupported by the totality of the evidence. AR 311. An ALJ may reject limitations unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, the ALJ outlined the medical and opinion evidence that led to the conclusion that Dr. Stoltz's opinion regarding hourly rest breaks was unsupported. For instance, the ALJ assigned significant weight to the opinions of the state agency physicians, Drs. Williams and Kriger, who relied on the consultative examination findings of Dr. Stoltz. AR 311. Dr. Williams did not identify an hourly rest break limitation and expressly indicated that review was centered "on the subjective, objective, and diagnostic findings and conclusions" as outlined by Dr. Stoltz, the consultative examiner. AR 56. Upon reconsideration, Dr. Kriger likewise identified no rest break limitation. AR 73-74.

The ALJ also afforded significant weight to the opinion of the consultative examiner, Dr. Georgis. AR 312. Dr. Georgis completed an orthopedic consultation on April 19, 2018, post remand, and did not identify any rest break limitations. AR 663-67. On examination, Plaintiff walked without evidence of a limp, Romberg test was normal, his cervical spine range of motion was within normal limits, decreased lumbar spine range of motion on flexion and extension, negative straight leg raising in the sitting and supine positions, and his neurological motor examination was within normal limits with normal muscle bulk and tone. AR 664-66. Dr. Georgis opined that Plaintiff could stand and/or walk up to 6 hours, sit up to 6 hours, and lift and carry 10 pounds frequently, 20 pounds occasionally. Assistive devices were not medically necessary. However, Plaintiff had limitations for postural activities such as climbing, stooping, crouching, crawling, balancing and kneeling. He had no manipulative limitations or environmental restrictions. AR 666-67.

To the extent the opinions of Drs. Williams, Kriger and Georgis conflicted with Dr. Stoltz's limitation to hourly rest breaks, the ALJ is responsible for resolving conflicts in the medical testimony.

*Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (noting ALJ responsible for resolving conflicts in medical testimony and resolving ambiguities); *Morgan*, 169 F.3d at 601. Additionally, to the extent that Dr. Georgis' conflicting opinion rested on independent, objective findings, that opinion constitutes substantial evidence. *Magallanes*, 881 F.2d at 753.

Finally, the ALJ discounted Dr. Stoltz's limitation to hourly breaks as "not sufficiently particular regarding the amount of time the claimant should rest every one hour." AR 312. Plaintiff argues that the ALJ's acknowledgment of ambiguous evidence triggered a duty to develop the record and obtain clarification. (Doc. 20 at 8.) "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Although Dr. Stoltz's rest break limitation was not particularized, there is no indication that the post-remand record was ambiguous or inadequate to allow for proper evaluation. Plaintiff's contention that the ALJ was required to recontact Dr. Stoltz for clarification is not persuasive.[4] Even assuming Dr. Stoltz's statement was ambiguous, any duty of the ALJ to develop the record further was discharged through post-remand proceedings, including the consultative examination completed by Dr. Georgis. *See*, *e.g.*, *Facey v. Comm'r of Soc. Sec.*, No. 2:19-CV-1596-DMC, 2021 WL 1212649, at *8 (E.D. Cal. Mar. 31, 2021) (finding ALJ may discharge duty to develop the record "in any number of ways, including subpoenaing the claimant's physicians, submitting questions to physicians, continuing the hearing, or ordering a consultative examination); *Hines v. Berryhill*, No. 16-CV-03078-JSC, 2017 WL 3251915, at *12 (N.D. Cal. July 31, 2017) (concluding ALJ can discharge duty to develop the record in several ways, including by: (1) making a reasonable attempt to obtain medical evidence from the claimant's physician(s); (2) ordering a consultative examination when the medical evidence is incomplete or unclear; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for more supplementation).

---

[4] As the Commissioner notes, Plaintiff relies on case law based on rescinded versions of 20 C.F.R. §§ 404.1512 and 416.912. These regulations were revised March 26, 2012, to omit any requirement to recontact medical sources in certain instances. *See* 20 C.F.R. §§ 404.1512 and 416.912 (effective March 26, 2012, to June 11, 2014).

The Court finds that the ALJ's evaluation of Dr. Stoltz's opinion is supported by substantial evidence and based upon proper legal standards.

### B.     Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred by failing to properly evaluate Plaintiff's subjective pain complaints. Specifically, Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's limitations in sustained sitting requiring the ability to stand, stretch, or lie down. (Doc. 20 at 10.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted his statements concerning the intensity, persistence and limiting effects of those symptoms. AR 306, 311. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The ALJ first found that Plaintiff's statements regarding his symptoms were inconsistent because he only received sporadic treatment. AR 311. An ALJ may properly discount a claimant's subjective complaints based upon infrequent treatment or gaps in treatment. See *Marsh v. Colvin*, 792 F.3d 1170, 1173 n. 2 (9th Cir. 2015) (finding ALJ may permissibly discount claimant's testimony based on gaps in treatment regimen); *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "unexplained or inadequately explained failure to seek treatment"), *superseded by regulation on other grounds*. The ALJ expressly noted a gap in Plaintiff's treatment at Fresno Shields Medical Center between May 6, 2016, and January 25, 2017. AR 309, 638-43. The ALJ also noted that despite Plaintiff's previous hearing testimony that he saw providers at Fresno Shields Medical Center every two weeks (AR 40), there was no evidence that Plaintiff was seen between August 16,

2017, and March 6, 2018.  AR 309, 669-73.  Plaintiff has not challenged the ALJ's determination that his treatment was sporadic and contained gaps.

Second, the ALJ found that Plaintiff's objective examinations, including nerve conduction studies, an electromyogram, and radiographic evidence did not support the severity of Plaintiff's subjective complaints.  AR 311.  Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ noted an April 3, 2013 x-ray of the lumbar spine showing scoliosis with convexity to the left with no other abnormalities detected.  AR 273, 306.  The ALJ also noted magnetic resonance imaging of Plaintiff's lumbar spine performed on August 8, 2013, which showed marked levoscoliosis centered at L1-12, with endplate sclerotic changes seen within the inferior end plate of L1 and superior end plate of L2, a 2-3mm posterior disc bulge at L1-2 resulting in mild right neural foraminal narrowing in conjunction with facet joint hypertrophy and right exiting nerve root compromise seen, and a 1-2mm posterior disc bulge at L4-5 resulting in mild bilateral neural foraminal narrowing and bilateral exiting nerve root compromise seen.  AR 236-38, 306.  However, the ALJ relied on subsequent nerve conductions studies and electromyograms of Plaintiff's upper and lower extremities performed on August 14, 2013, which were normal.  AR 243-45, 253-57, 306, 311.  The ALJ also cited later lumbar spine x-rays completed on July 25, 2017, which showed degenerative changes of the lumbar spine and lower thoracic spine, rotatory scoliosis in the lumbar spine, but no evidence of subluxations and disc spaces within normal limits.  AR 310, 661.  Further, a scoliosis series of x-rays showed only mild degenerative change of the lower thoracic spine and mild thoraco-lumbar scoliosis.  The pedicles and costovertebral joints were normal, and the disc spaces and paravertebral soft tissues were normal.  AR 310, 662.

Third, the ALJ discounted Plaintiff's statements based on his ability to provide in home supportive services to his daughter, preventing her from wandering to the neighbor and around the neighborhood, and he was able to perform household chores and drive.  AR 311.  An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged.  *Molina*, 674 F.3d at 1112–13 (an ALJ may consider "whether the claimant engages in daily activities inconsistent

with the alleged symptoms"). The ALJ noted Plaintiff's self-described activities, which showed that he was able to care for the significant needs of his special needs daughter, including restricting her activities in the neighborhood, taking her to school and shopping, and helping her with her homework. Plaintiff also was able to perform household chores and activities of daily living. AR 305, 312, 556-57, 564-66.

Plaintiff argues that these activities do not correspond to work activities and do nothing to contradict Plaintiff's testimony. (Doc. 20 at 10.) Plaintiff's argument is not persuasive given that in home support services is a work activity and Plaintiff received remuneration for such work. AR 351-53. The Court recognizes that this work was not performed at substantial gainful activity levels. AR 353. Nonetheless, even where a Plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

The Court therefore concludes that the ALJ did not commit reversible error in evaluating Plaintiff's subjective complaints.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and
2. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Tigran Iskenyan.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.

*Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

| Dated: | **February 24, 2022** | /s/ *Barbara A. McAuliffe* |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |